# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 2, 2024

Lyle W. Cayce
Clerk

No. 23-10072

Cheryl Butler,

*Plaintiff—Appellant*,

*versus*

Jennifer M. Collins; Steven C. Currall; Roy P. Anderson; Julie P. Forrester; Harold Stanley; Paul Ward; Southern Methodist University,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:18-CV-37

Before Southwick, Engelhardt, and Wilson, *Circuit Judges*.

Per Curiam:*

Defendant-Appellee Southern Methodist University ("SMU") previously employed Plaintiff-Appellant Cheryl Butler as a law professor at the SMU Dedman School of Law. After being denied tenure in 2016 and leaving the law school in 2017, Butler sued SMU and a number of its administrators and professors, asserting a number of federal and state-law claims arising

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

from and/or related to her tenure application and its denial. Deciding that the Texas Commission on Human Rights Act, TEX. LAB. CODE §21.001 *et seq*., preempts Butler's negligent supervision claim against SMU, as well as her fraud, defamation, and conspiracy-to-defame claims against the individual defendants, the district court granted the defendants' Rule 12(b)(6) motion to dismiss those claims. On appeal, Butler challenges the district court's determination that the TCHRA preempts the fraud, defamation, and conspiracy-to-defame claims that she asserted against the individual defendants—SMU employees. For the reasons discussed herein, we certify a question to the Supreme Court of Texas.

## I.

## CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT TO THE SUPREME COURT OF TEXAS, PURSUANT TO ARTICLE V, § 3-C OF THE TEXAS CONSTITUTION AND RULE 58 OF THE TEXAS RULES OF APPELLATE PROCEDURE

**TO THE SUPREME COURT OF TEXAS AND THE HONORABLE JUSTICES THEREOF:**

### A. Style of the Case

The style of the case in which this certification is made is *Cheryl Butler, Plaintiff-Appellant v. Jennifer M. Collins, Steven C. Currall, Roy P. Anderson, Julie P. Forrester, Harold Stanley, Paul Ward, and Southern Methodist University, Defendants-Appellees*, No. 23-10072, in the United States Court of Appeals for the Fifth Circuit. The case is on appeal from the United States District Court for the Northern District of Texas. Federal jurisdiction is provided by 28 U.S.C. §§ 1331, 1367, and 1446. Texas law governs the state-law claims.

B. Background

In August 2011, Butler, a law professor, accepted a position at SMU's law school. In January 2016, however, her application for tenure and promotion was denied. Although she completed her terminal year of employment at SMU, she did not teach any classes during the 2016–2017 academic year.

After leaving SMU, Butler filed this lawsuit against SMU, its then-Provost Steven C. Currall, Law School Dean Jennifer M. Collins, Associate Provost Julie P. Forrester, Vice-President for Executive Affairs Harold Stanley, General Counsel Paul Ward, and the chairperson of her tenure committee, Roy P. Anderson. As set forth in her Second Amended Complaint, Butler asserted Texas common-law claims for breach of contract, fraud, defamation, conspiracy-to-defame, and negligent supervision—as well as statutory claims under 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17; the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. §§ 701–794a; the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101–12213; the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601–2664; and the Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab. Code §§ 21.001–21.306—arising from, or related to, SMU's consideration and denial of her tenure application.

Following removal of the action to federal court, the defendants filed a motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, seeking dismissal of certain claims: (1) the state-law tort claims for negligent supervision against SMU; (2) the state-law fraud, defamation, and conspiracy-to-defame tort claims against Currall, Collins, Forrester, Stanley, Ward, and Anderson (hereinafter, the "Individual Defendants"); and (3) the § 1981 and FMLA claims asserted against the Individual Defendants. The state-law

claims, the defendants argued, are preempted by the TCHRA. The district court granted the motion as to Butler's negligent supervision claim against SMU (Count 8) and the fraud, defamation, and conspiracy-to-defame claims against the Individual Defendants (Counts 1–7), but denied it as to the FMLA and § 1981 claims (Counts 10–12 and 23–26). After discovery and motion practice, the district court granted the defendants' motion for summary judgment regarding Butler's remaining claims, dismissing them with prejudice. This appeal followed.

C. Legal Issues

Butler challenges the district court's determination that the TCHRA preempts the common-law fraud, defamation, and conspiracy-to-defame claims that she asserted against the Individual Defendants—SMU employees Currall, Collins, Forrester, Stanley, Ward, and Anderson. In support of that ruling, the district court, citing *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 802, 808–09 (Tex. 2010), reasoned: "Plaintiff's defamation and fraud claims are preempted by the TCHRA, as the gravamen of these claims is, as Defendants argue, for unlawful employment discrimination and retaliation, wrongs that the TCHRA is specifically designed to address." The same logic applied to Butler's conspiracy- to defame claim, the district court surmised, "[b]ecause the conspiracy claim is derivative of her . . . defamation claim." As further explanation for its ruling, the district court quotes the following excerpt from the defendants' memorandum:

> In this case, Butler alleges a discriminatory and retaliatory scheme that took place over her entire tenure at SMU and involved many members of the faculty, not a single unexpected incident of attempted rape. Every allegation Butler raises of defamatory or fraudulent conduct by the individual defendants takes place within the scope of their employment in terms of discrimination and retaliation in the tenure and promotion process. *See, e.g.*, 2d Am. Compl. ¶¶ 631, 638, 645 (alleging

> defendants defamed Butler because they sought to retaliate against her). Butler's fraud claim is based on the same conduct as her discrimination and retaliation claims. The Second Amended Complaint directly and repeatedly links Butler's fraud allegations to discrimination and retaliation, explicitly alleging that withholding the tenure report was retaliatory for discrimination complaints. *See, e.g.*, 2d Am. Compl. ¶¶ 664-666, 670, 672-675, 678. . . . The gravamen of all Butler's claims in the Second Amended Complaint is discrimination and retaliation in connection with the tenure and promotion process. Accordingly, like the tort claims in *Waffle House*, *Hassell* [*v. Axium Healthcare Pharmacy, Inc.*, No. 4:13-CV-746-O, 2014 WL 1757207 at *7 (N.D. Tex. May 2, 2014)], and *Woods* [*v. Communities in School Se. Tex.*, No. 09-14-00021-CV, 2015 WL 2414260 at *10 (Tex. App. Beaumont May 21, 2015, no pet.)], Butler's tort claims are all preempted by the TCHRA.

*See Butler v. Collins*, No. 3:18-CV-37-L, 2019 WL 13031414, at *3 (N.D. Tex. Mar. 31, 2019).

Our review of the district court's Rule 12(b)(6) dismissal of Butler's state-law tort claims against the Individual Defendants is *de novo*. *Meador v. Apple, Inc.*, 911 F.3d 260, 264 (5th Cir. 2018). "When adjudicating claims for which state law provides the rules of decision, we are bound to apply the law as interpreted by the [relevant] state's highest court." *Barfield v. Madison Cnty., Miss.*, 212 F.3d 269, 271–72 (5th Cir. 2000) (citing *Transcontinental Gas v. Transportation Ins. Co.*, 953 F.2d 985, 988 (5th Cir. 1992)). For this civil matter, that court is the Supreme Court of Texas. [1] If that court has not yet decided the issue before us, an *Erie* guess as to what it most likely would

[1] The district court exercised supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over these claims; therefore, as in a diversity case, we apply Texas substantive law to these claims. *Am. Precision Ammunition, L.L.C. v. City of Min. Wells*, 90 F.4th 820, 825 (5th Cir. 2024).

decide is necessary, "mindful that our task is 'to predict state law, not to create or modify it.'" *McMillan v. Amazon.com, Inc.*, 983 F.3d 194, 199 (5th Cir. 2020) (quoting *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 558 (5th Cir. 2002)). In doing so, we may look to the decisions of intermediate appellate state courts for guidance. *Howe ex rel. Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 627 (5th Cir. 2000).

As Texas' highest court has recognized, the TCHRA establishes a comprehensive statutory scheme addressing unlawful employment practices, including discrimination and retaliation, by employers, employment agencies, and labor organizations. *See City of Waco v. Lopez*, 259 S.W.3d 147, 153 (Tex. 2008) ("The [T]CHRA was enacted to address the specific evil of discrimination and retaliation in the workplace.); *id.* at 153–54 ("By enacting the [T]CHRA, the Legislature created a comprehensive remedial scheme that grants extensive protections to employees in Texas, implements a comprehensive administrative regime, and affords carefully constructed remedies."); *see also* Tex. Lab. Code § 21.051 (discrimination by employer because of race, color, disability, religion, sex, national origin and age is an unlawful employment practice); § 21.055 (retaliation by employer); § 21.056 (aiding, abetting, inciting or coercing a discriminatory practice); § 21.002 (defining "employee" and "employer").[2]

The TCHRA's provisions include, *inter alia*, statutory remedies against employers who have engaged in unlawful employment practices. *See* Tex. Lab. Code § 21.258 (authorizing injunctive and other equitable relief against an employer who has engaged in unlawful employment practices); § 21.2585 (authorizing compensatory and punitive damage awards against an

---

[2] The TCHRA also addresses unlawful employment practices by employment agencies and labor organizations. *See* Tex. Lab. Code § 21.052 (employment agency); § 21.053 (labor organization).

employer engaged in an unlawful intentional employment practice); § 21.259 (authorizing award of attorney's fees to prevailing party).

No statutory remedy, however, is provided against individual supervisors or managers. *See BC v. Steak N Shake Operations, Inc.*, 512 S.W.3d 276, 282 (Tex. 2017) (recognizing that "assault claims against individual assailants do not fall within the scope of the TCHRA" and that the "TCHRA . . . provide[s] a claim for individuals against their *employers*" (emphasis in original)); *Winters v. Chubb & Son, Inc.*, 132 S.W.3d 568, 580 (Tex. App.—Houston 2004) (individual cannot be held personally liable under the TCHRA); *Jenkins v. Guardian Indus. Corp.*, 16 S.W.3d 431, 439 (Tex. App. 2000) (supervisors and managers not liable in individual capacities under the TCHRA); *City of Austin v. Gifford*, 824 S.W.2d 735, 742 (Tex. App.—Austin 1992, no writ) (TCHRA does not create a cause of action against supervisors or individual employees); *see also Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 686 (5th Cir. 2001) (supervisors and managers are not considered employers under the Texas Labor Code and, therefore, are not individually liable for age discrimination). Rather, these "specific and tailored" remedies are part of an "elaborately crafted statutory scheme that . . . incorporates a legislative attempt to balance various interests and concerns of *employees* and *employers*." *Waffle House*, 313 S.W.3d at 799, 804 (emphases added).

Although the district court's assessment of the TCHRA's preemptive reach may ultimately prove correct, we are more circumspect. Notably, in both cases in which the Supreme Court of Texas addressed the TCHRA's preemption of common-law tort claims, the only claims at issue were asserted against the plaintiff-employee's employer, *not* the plaintiff's supervisor, manager, or other coworker. *See Waffle House*, 313 S.W.3d at 802–03; *Steak N Shake*, 512 S.W.3d at 280–82. And, in those cases, the Texas court repeatedly distinguished claims asserted by an employee against her *employer* from those asserted against a *coworker*, individually. *Waffle House*, 313 S.W.3d

at 803 ("The issue before us . . . is not whether Williams has a viable tort claim against a *coworker*. The issue is whether a common-law negligence action should lie against her *employer* . . . or whether, instead, a statutory regime comprehensively addressing employer-employee relations in this context should exclusively govern." (emphases in original)); *id.* at 803 ("Today's question is whether *employer liability* . . . is limited to a tailored TCHRA scheme." (emphasis added)); *Steak N Shake*, 512 S.W.3d at 282 ("TCHRA is a statutory scheme created to provide a claim for individuals against their *employers*" (emphasis in original)).

Indeed, the continued viability of certain common law tort claims against individual wrongdoers was expressly confirmed. *See Waffle House*, 313 S.W.3d at 799 ("Nor does today's decision bar a tort claim against the harasser/assailant individually."); *id.* at 802 ("[T]he legislative creation of a statutory remedy is not presumed to displace common-law remedies[.]"); *Steak N Shake*, 512 S.W.3d at 282, 284 ("[C]ivil remedies against individual assailants have long existed under Texas common law[,]" and "no evidence suggests that the Legislature intended to abrogate common law assault when it enacted the TCHRA[.]"); *id.* at 282 ("[T]he Legislature did not intend for individual assailants to receive [the benefits the TCHRA provides to employers] simply because those assaults occurred in the workplace and not elsewhere.").

But it is not entirely clear from these decisions whether the distinction drawn in *Waffle House* and *Steak N Shake*—between tort claims asserted against individual *coworkers* and tort claims asserted against *employers*—is limited to instances of unwanted physical contact or, instead, extends to other harmful workplace conduct, including defamation and/or fraud, for which Texas common law subjects employees engaging in that conduct to personal tort liability. *See, e.g.*, *Keyes v. Weller*, — S.W.3d —, 2024 WL 3210234, *6–8 (Tex. June 28, 2024) (corporate agents can be held personally

liable for their own tortious conduct); *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 386, 375 (Tex. 1984) (libel); *Goodman v. Gallerano*, 695 S.W.2d 286, 287–88 (Tex. App.—Dallas 1985) (defamation).

And post-*Waffle House* decisions from the Texas intermediate appellate courts offer only limited and mixed guidance. In *Woods v. Communities in School Southeast Texas*, No. 09-14-00021-CV, 2015 WL 2414260 at *10 (Tex. App.—Beaumont, May 21, 2015, no pet.), the Texas appellate court affirmed the trial court's dismissal, with prejudice, of the common-law breach of contract and fraud claims that the plaintiffs had asserted against their former supervisor. In doing so, the court reasoned that the facts giving rise to those claims were "inextricably intertwined" with the facts on which the plaintiffs' complaints of race discrimination and retaliation (against their former employer) were based; that "[t]he TCHRA does not create a cause of action against supervisors or individual employees for an unwanted employment practice"; and that "the purposes and policies embodied in the TCHRA would be 'thwarted' if the [the plaintiffs] could simply reframe their disputes as a fraud or breach of contract claim to 'sidestep' the requirements of the TCHRA." *Id.*

Conversely, in *Garcia v. Shell Oil Co.*, 355 S.W.3d 768, 778 (Tex. App.—Houston 2011), the Texas appellate court reversed the trial court's dismissal of the intentional infliction of emotional distress claim that Garcia, the plaintiff-employee, had asserted against Penilla, individually. In doing so, the court considered "whether Title VII and the Texas employment discrimination statutes were meant to preclude common-law causes of action for non-employers." *Id*. at 776. Deciding that they were not, the court reasoned: "Because Garcia's claims against Penilla as the bad actor are not actionable under Title VII [or Chapter 21 of the Texas Labor Code], [those statutory schemes] cannot preclude any common-law actions against [Penilla] as the bad actor regardless of whether they would be precluded in a

claim against the business [as Garcia's *employer*] had it [Penilla's business, Quality Thermo Services] been a separate entity [rather than a sole proprietorship]." *Garcia*, 355 S.W.3d at 778 (citing *Waffle House*, 313 S.W.3d at 803, and *Grant v. Lone Star Co.*, 21 F.3d 649, 653 (5th Cir. 1994)).

Post-*Waffle House* jurisprudence from federal district courts also is limited. In addition to the instant district court's decision, the Northern District of Texas decided *Patton v. Adesa Texas*, 985 F.Supp. 2d 818 (N.D. Tex. 2013), after *Waffle House* but before *Steak N Shake*. The *Patton* court rejected the defendants' assertion that the TCHRA preempted the plaintiff's defamation claim against the individual defendants—the plaintiff's co-workers—reasoning that the defendants "read *Waffle House* too broadly" because "there is nothing in *Waffle House* that bars a plaintiff from also asserting intentional torts against individuals." *Id.* at 821–22.

Under these circumstances, we think it wise to consider certifying the preemption question to the Supreme Court of Texas. As stated in Rule 58.1 of the Texas Rules of Appellate Procedure, "[t]he Supreme Court of Texas may answer questions of law certified to it by any federal appellate court . . . presented with determinative questions of Texas law having no controlling Supreme Court precedent." Tex. R. App. P. 58.1; *see also* Tex. Const. art. V, § 3-c(a) ("The supreme court and the court of criminal appeals have jurisdiction to answer questions of law certified from a federal appellate court."). In assessing the propriety of certifying a question of state law to a state's highest court, we consider:

> (1) the closeness of the question and the existence of sufficient sources of state law; (2) the degree to which considerations of comity are relevant in light of the particular issue and case to be decided; and (3) practical limitations of the certification process: significant delay and possible inability to frame the issue so as to produce a helpful response on the part of the state court.

*Silguero v. CSL Plasma, Inc.*, 907 F.3d 323, 332 (5th Cir. 2018) (quoting *Swindol v. Aurora Flight Sciences Corp.*, 805 F.3d 516, 522 (5th Cir. 2015), *certified question accepted* (Oct. 26, 2018), *certified question answered*, 579 S.W.3d 53 (Tex. 2019).

In this instance, the preemption question before us is not controlled by existing Supreme Court of Texas precedent. It also is determinative. That is, if the TCHRA preempts a plaintiff-employee's common-law defamation and/or fraud claims against another *employee*—insofar as those claims are based on the same course of conduct as discrimination and/or retaliation claims asserted against the plaintiff's *employer*—the district court properly dismissed the fraud, defamation, and conspiracy-to-defame claims that Butler asserted against the Individual Defendants. Conversely, if such claims are not preempted, the district court's Rule 12(b)(6) dismissal—for failure to state a claim upon which relief can be granted—must be reversed.

The factors that have been identified by our case law also weigh in favor of certification. The importance of this close, but unsettled, question of Texas law is obvious, especially to the Texas workforce, and existing jurisprudence lacks sufficient clarity and/or consensus. *Cf. Port Arthur Cmty. Action Network v. Texas Comm'n on Env't Quality*, 92 F.4th 1150, 1152 (5th Cir. 2024) ("[A]ny Erie guess would involve more divining than discerning." (quoting *McMillan,* 983 F.3d at 202)), *certified question accepted* (Feb. 23, 2024); *McMillan*, 983 F.3d at 202 ("[F]ederal-to-state certification is prudent when consequential state-law ground is to be plowed, such as defining and delimiting state causes of action."), *certified question answered*, 625 S.W.3d 101 (Tex. 2021); *JCB, Inc. v. Horsburgh & Scott Co.*, 912 F.3d 238, 241 (5th Cir. 2018), *as revised* (Nov. 14, 2018) ("Texas has an obvious interest in providing its citizens with a proper and uniform statewide interpretation of [its statute], binding in both state and federal court, which only the Supreme Court of Texas can provide."), *certified question accepted*

(Nov. 30, 2018), *certified question answered*, 597 S.W.3d 481 (Tex. 2019); *Louisiana v. Anpac La. Ins. Co. (In re Katrina Canal Breaches Litig.)*, 613 F.3d 504, 509 (5th Cir. 2010) ("[C]ertification may be appropriate where important state interests are at stake and the state courts have not provided clear guidance on how to proceed." (quoting *Free v. Abbott Labs.*, 164 F.3d 270, 274 (5th Cir. 1999)).

We also perceive no practical limitations associated with the certification process. We can formulate discrete issues for consideration while also disclaiming any intent or expectation that the Supreme Court of Texas confine its reply to the precise form or scope of the question certified. And, of course, the Supreme Court of Texas has the discretion to decline certification if it disagrees with our analysis of these factors. *See* TEX. R. APP. P. 58.1 ("The Supreme Court may decline to answer the question certified to it.") Finally, the Supreme Court of Texas has historically been very prompt in its certification responses.

Given the foregoing, we conclude certification is prudent and appropriate in this case.

D. Question Certified

We certify the following question of law to the Supreme Court of Texas:

> Does the Texas Commission on Human Rights Act ("TCHRA"), TEXAS LABOR CODE § 21.001, *et seq.*, preempt a plaintiff-employee's common-law defamation and/or fraud claims against another employee to the extent that the claims are based on the same course of conduct as discrimination and/or retaliation claims asserted against the plaintiff's employer?

We again disclaim any intent that the Supreme Court of Texas confine its reply to the precise form or scope of the legal question we certify. Lastly, in

accordance with Rule 58.4 of the Texas Rules of Appellate Procedure, the record for this appeal will not accompany our certification but will be promptly provided upon request.

## II.

In addition to challenging the district court's state-law preemption ruling, Butler appeals a number of the district court's non-dispositive orders, as well as its summary judgment dismissal of her remaining claims. We pretermit review of the district court's other rulings pending the Supreme Court of Texas's disposition of our certified question.

## III.

For the foregoing reasons, we certify the preemption question stated above to the Supreme Court of Texas. We retain this appeal pending response from the Supreme Court of Texas and direct the Clerk of Court to place this matter in abeyance pending receipt of that response.

QUESTION CERTIFIED.